UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| JEFFREY M. SNOW, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06-cv-564 |
| | ) | |
| v. | ) | |
| | ) | Honorable Robert Holmes Bell |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.  Plaintiff filed his applications on April 23, 2003 (A.R. 44-46, 376-78), claiming a September 15, 2000 onset of disability.  Plaintiff's claims were denied on initial review. (A.R. 32-36, 381-84).  On August 16, 2005, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 401-35).  On December 19, 2005, the ALJ issued a decision finding that the 25-year-old claimant was not disabled, and denied plaintiff's applications for benefits. (A.R. 14-24).  On June 30, 2006, the Appeals Council denied review (A.R. 6-8), and the ALJ's decision became the Commissioner's final decision.  On August 8, 2006, plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits.

Plaintiff's statement of errors is set forth verbatim below:

I. The treating psychiatrist provided a statement of marked work limitations. The ALJ did not ask the VE any questions based on those limitations, indicating he assumed that they eliminated all jobs. But the Decision disregarded the statement in violation of Social Security law. The doctor's statement should have received controlling weight. This error authorizes a remand for an award of benefits.

II. The Decision performed a credibility evaluation. It identified the procedure it would use to perform that evaluation, but ignored the key components of the procedure. It completely failed to consider the side effects of medication in violation of Social Security Ruling 96-7p. The errors in the credibility evaluation authorize a remand for a new hearing.

(Plaintiff's Brief at 1, docket # 9). Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision, and I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331

(6th Cir. 1993). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on September 15, 2000, his alleged onset of disability, and continued to meet the requirements through the September 30, 2002, but not thereafter.[1]  Although plaintiff had

---

[1] Distinct time periods frame plaintiff's applications for DIB and SSI benefits. (A.R. 15). The relevant time period for plaintiff's DIB claim was from plaintiff's alleged onset of disability

performed work after his alleged onset of disability, the ALJ found that there was "no evidence that plaintiff had performed substantial gainful activity after September 2000" that would have compelled a finding of non-disability at Step 1 of the sequential analysis. (A.R. 23). The ALJ found that plaintiff had medically determinable impairments of "a personality disorder (Exhibit 13F, p.1; Exhibit 4F, p.10) with features of an avoidant personality disorder (Exhibit 13F, p.1), a depressive disorder (Exhibit 12F, p.45; Exhibit 4F, p.10), and an anxiety disorder (*see e.g.*, Exhibit 1F, p.1)." (A.R. 16). "[W]hile each of these impairments [was] not severe if considered separately, the claimant's medically determinable impairments in combination [were] severe." (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ found that plaintiff's subjective complaints were not fully credible:

> I find that the claimant's allegations of mental disability are not wholly credible for a number of reasons.
>
> Regarding the claimant's daily activities, the claimant tries to golf regularly during the warmer months. He often goes out to eat with his roommate, and if there is work to be done at his parents' home, he often provides assistance to them. He helps with housecleaning and is able to cook basic meals. During the evening, he may visit his family or other friends. (Exhibit 6F, p.2). The claimant practices the guitar "routinely" (Exhibit 11F, p.6; Exhibit 12F, p. 27). He leaves home for three to six hours every day, and he goes out alone[.] [H]e has a driver's license and can drive a car (Exhibit 3E, p. 5). He shops and handles his own money (Exhibit 3E, pp. 4, 5). According to Mr. Snow, if he is under stress he has to "lash

---

(September 15, 2000), through plaintiff's date last disability insured (September 30, 2002). The relevant time period for plaintiff's SSI claim was from April 2003, the month plaintiff filed his application for SSI benefits, December 19, 2005, the date of the ALJ's decision. SSI benefits are not awarded retroactively. 20 C.F.R. § 416.335; *see Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995); *see also Romero v. Barnhart*, 135 F. App'x 172, 174 (10th Cir. 2005); *Newson v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month plaintiff could have been entitled to SSI benefits was May 2003, the month after he filed his application for SSI benefits. 20 C.F.R. § 416.335.

> out/break something when alone" (Exhibit 3E, p.7). Generally, the claimant's activities of daily living are unremarkable. He consistently reports anger "when with himself" (Exhibit 3F, p. 39) or when alone (Exhibit 3E, p.7). Thus, I conclude that he would not exhibit these symptoms at work, with other people present.
>
> Regarding the details of Mr. Snow's symptoms and the factors that precipitate and aggravate the symptoms, as noted, he reports anger when alone. The claimant has also reported nervousness, even with friends (Exhibit 3F, p.38). Dr. Williams stated that Mr. Snow has complained of intense social anxiety (Exhibit 13F, p. 1). However, the claimant socializes to the extent that he was on a hockey team (*see*, e.g., Exhibit 2F, p. 2; Exhibit 13F, p.1). With the consultative psychologist, there was no problem establishing positive rapport, and the doctor observed no problems with socialization (Exhibit 6F). In February 2004, the claimant was attending school part-time (Exhibit 11F, p. 5 (back)). In August 2004, Mr. Snow had a young girlfriend "of sorts" (Exhibit 12F, p. 12). As noted, he lives with [a] roommate, and they go out to eat together several times a week (Exhibit 3E, pp. 1, 2). Regarding how symptoms may affect attention, concentration, and pace, in February 2003, the claimant progressed well despite a struggle with staying focused, and in March of 2003, he "acknowledged that he has to make a conscious choice to stay focused[.]" (Exhibit 3F, pp. 16, 19). As noted, the claimant performed well on a formal mental status test (Exhibit 6F, p. 2). Due to the inconsistencies, it seems that the claimant may exaggerate the intensity and frequency of his symptoms, particularly since he apparently does not fully comply with his medication regimen.

(A.R. 20-21).

The ALJ observed that although plaintiff claimed that he had suffered closed head injuries as a child and while playing hockey, plaintiff failed to submit medical evidence substantiating his head injury claims:

> Mr. Snow also alleges closed head injuries (Exhibit 1E, p.2). He describes falling down stairs as a child, and he also reports [] hockey injuries. However, after his childhood, the claimant completed high school (Exhibit 1E, p.8), and he worked at Meijer Stores and performed substantial gainful activity (Exhibit 3D, pp. 1-2; Exhibit 4E, p.1). Thus, it appears that the childhood injury did not limit his ability to work. Mr. Snow does not identify the date of his alleged hockey injuries.

(A.R. 16).

The ALJ explained at length his reasons for rejecting opinions offered by Dr. Russell Hibbard, a treating psychiatrist:

As noted, Mr. Snow stated that he is disabled, in part, due to Attention Deficit Disorder (ADD), and he told the consultative psychologist that he was treated for Attention Deficit Hyperactivity Disorder in the past (Exhibit 6F, p.1). The consultative psychologist, George Starrett, Ed. D., opined that Attention Deficit Disorder (Inattentive Type) needed to be ruled out (Exhibit 6F, p.3). Dr. Russell Hibbard, the treating psychiatrist, wrote a note seeking to excuse the claimant from jury duty because of "ADD-like deficits consequent on repeated brain trauma" (Exhibit 12F, p.24). But Dr. Hibbard's comment falls short of a diagnosis. I find that the claimant has not established Attention Deficit Disorder as medically determinable.

* * *

Dr. Hibbard states that there exists "the distinct possibility that during [a] fall as a child and/or . . . accidents during playing hockey, he did incur a traumatic brain injury" (Exhibit 13F, p.1). Elsewhere, when endorsing the claimant's applications for government benefits, Dr. Hibbard is more positive, stating that "head trauma lead to brain damage" (Exhibit 12F, p. 45). Nevertheless, Dr. Hibbard does not diagnose an organic brain disorder (*id*). The claimant was in "neurobehavioral reprogramming" treatment with a psychologist, Dr. Richard Williams. Dr. Williams states that the claimant had "pervasive problems in his personal growth" as a child, and states: "it is difficult if not impossible to separate the effects of a traumatic brain injury from his most dysfunctional history" (Exhibit 13F, p.1). Dr. Williams states that an electroencephalogram (EEG) did not definitively establish [] a closed head injury, but was "highly consistent with such a pattern of brain injury" (*id.*). In summarizing his diagnosis, Dr. Williams states that the claimant has "both dependent and avoidant personality disorder[s] along with the potential of traumatic brain injury" (Exhibit 13F, p.1)(emphasis added). The electroencephalogram (EEG) is not in evidence, and a "potential" is insufficient to establish a medically determinable impairment. Furthermore, the claimant drove himself to the consultative psychological examination, and arrived on time (Exhibit 6F, p.2). During the evaluation, the claimant demonstrated the ability to perform serial 7's (*id.*).

* * *

On August 21, 2005, Dr. Hibbard opined that the claimant is not significantly limited in the ability to understand and remember very short instructions, and make simple work-related decisions. (Exhibit 14F, pp. 1-2). To this extent, his opinion is consistent with the State Agency medical consultant. Dr. Hibbard, however, further opines that the claimant is markedly limited in the ability to maintain concentration and attention for extended periods, and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. He also opines that Mr. Snow is markedly limited in his ability to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the public, and to get along with coworkers and peers without distracting them or exhibiting behavioral extremes (Exhibit 14F, pp. 2-3). I do not accept Dr. Hibbard's opinions with respect to these work-related functions.

> Dr. Hibbard's notes (Exhibits 12F and 14F) document Mr. Snow's subjective complaints, and the encouragement that Dr. Hibbard provided. In any of Dr. Hibbard's notes, I do not find a documented mental status examination. At the consultative psychological evaluation, Dr. Starrett conducted a mental status examination (Exhibit 6F, p.2), and the claimant concentrated sufficiently to remember three of three objects after three minutes, to remember six digits forward and five backwards, and to correctly perform serial 7's (*id.*). Furthermore, while on August 21, 2005, Dr. Hibbard opined that the claimant is unable to maintain concentration and attention for extended periods, on July 7, 2005, Dr. Williams stated: "Today, he has shown some modest improvement in his attention along with some fairly impressive improvements in his ability to maintain attention over extended periods" (Exhibit 13F, p.2)(emphasis added). Dr. Hibbard's opinion, therefore, [was] contradicted by Dr. Williams, another treating source. Furthermore, Dr. Hibbard fails to address the extensive periods, discussed below, during which other than for Ativan, the claimant is without medication. And given the discussion below, I am seriously concerned with the claimant's compliance with a medical regimen.

(A.R. 17, 19). Plaintiff's residual functional capacity (RFC) did include any exertional limitations. Plaintiff's nonexertional limitations limited him to performing simple, repetitive tasks. The ALJ found that plaintiff's past relevant work as a "marker," both as plaintiff performed it and as generally performed in the national economy, did not require the performance of activities in excess of plaintiff's RFC. Because plaintiff was capable of performing his past relevant work, the ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis. (A.R. 14-24).

**1.**

Plaintiff asks the court to consider evidence that he never presented to the ALJ in the process of determining whether the ALJ's decision is supported by substantial evidence. (Plaintiff's Brief at 13, docket # 9). This is patently improper. For more than a decade it has been clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has

repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

A request for a remand to the Commissioner appears in the last sentence of plaintiff's brief: "The procedurally flawed credibility evaluation at least entitles Mr. Snow to a remand for a new hearing." (Plaintiff's Brief at 20. docket # 9). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). Plaintiff requests a sentence four remand. The court cannot consider evidence that was not submitted to the ALJ in the sentence four context.

The court can consider plaintiff's newly proffered evidence in determining whether a sentence six remand is appropriate. *See Foster*, 279 F.3d at 357; *Cline*, 96 F.3d at 148; *Cotton*, 2 F.3d at 696. Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the "evidence" plaintiff now presents is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005); *Cline*, 96 F.3d at 148; *Balogh v. Commissioner*, 94 F. App'x 286 (6th Cir. 2004) (A sentence six remand "requires that all three elements be met."). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has not addressed, much less carried his burden with regard to any of the three statutory requirements.

Plaintiff has not submitted "new" evidence. The ALJ issued his decision on December 19, 2005. Plaintiff's proffered Million Clinical Multiaxial Inventory-III Interpretive Report (A.R. 393-400) is dated February 20, 2004. This evidence is not new because it clearly existed long before the ALJ issued his decision. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357; *see also Templeton v. Commissioner*, 215 F. App'x 458, 463 (6th Cir. 2007).

Plaintiff has not demonstrated "good cause." The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good cause); *Cranfield v. Commissioner*, 79 F. App'x 852, 859 (6th Cir. 2003) (same). Plaintiff's brief fails to

address his burden of demonstrating good cause. He has not carried his burden of explaining why this evidence was not obtained earlier and submitted to the ALJ before his decision.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). Plaintiff has not addressed or carried his statutory burden. Upon review, I do not find a reasonable probability that the Commissioner would have reached a different decision if the evidence had been presented and considered.

In summary, plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. Accordingly, I recommend that plaintiff's request for remand be denied. The ALJ's decision nyst be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ failed to give "controlling weight" to Dr. Hibbard's opinions. (Plaintiff's Brief at 12). Dr. Hibbard classified plaintiff as "markedly limited" in six areas of mental functioning and "moderately limited" in six other areas (A.R. 301-02), and concluded his statement in support of plaintiff's claims for SSI and DIB benefits as follows:

> I have been Jeffrey Snow's treating psychiatrist since 2001. I have been managing him on different medications to control his symptoms with mixed results. I have also referred Mr. Snow to Richard Williams Ph.D., for counseling.
>
> I do not believe that this patient would be able to maintain employment on a sustained basis. While we have made some progress towards controlling his symptoms, he continues to

>experience times when his symptoms exacerbate and he is unable to perform work. This happens frequently enough that I would expect him to miss more than three days per month on average if he attempted to maintain full-time employment.
>
>The level of function Mr. Snow has been able to achieve has occurred without the involvement of work stress. Adding work stress to his situation would make it more difficult to control his symptoms and, likely, would lead to an increase in the frequency of the serious exacerbation of his symptoms.

(A.R. 303). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ rejected Dr. Hibbard's opinions as being unduly restrictive and inconsistent with the record as a whole. The ALJ found that Dr. Hibbard's opinions were not well supported by objective test results, and that Dr. Hibbard primarily relied on the recording of plaintiff's subjective complaints. A treating physician's opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Pascoe v. Commissioner*, 137 F. App'x 828, 837 (6th Cir. 2005); *see also Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006)("Although the opinion of a treating physician is generally accorded great weight, such deference applies only where the physician's opinion is based on sufficient medical data."); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005)("[R]egardless of whether Dr. McFadden was a treating physician, his opinion was entitled to controlling weight only if it was 'well-supported my medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record.'")(quoting 20 C.F.R. § 404.1527(d)(2)). An opinion

that is based on the claimant's reporting of his or her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, it does not necessarily mean that the opinion should be completely rejected; the weight to be given to the opinion is determined by a set of factors that guides the weight given to the medical opinion, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted in 1996 WL 374188, at * 4 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006). Here, the ALJ accepted part of Dr. Hibbard's opinion and rejected other parts that were unsupported by appropriate testing or contradicted by the evidence. I find no error in the weight the ALJ gave plaintiff's treating physician's opinion. I further find that the ALJ satisfied the procedural requirement of giving "good reasons" for the weight given to Dr. Hibbard's opinions. *See Smith v. Commissioner*, 482 F.3d at 875-76; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

**3.**

Plaintiff argues that the ALJ made an "improper evaluation" of plaintiff's credibility. (Plaintiff's Brief at 17). This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th

Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). Here, the ALJ's credibility determination is supported by more than substantial evidence, particularly given plaintiff's expansive daily activities. (A.R. 20-21).

**4.**

Plaintiff argues in hyperbolic terms that the ALJ's decision "fails spectacularly 'to consider the side effects of medication" and "makes much of medical 'non-compliance' without benefit of any medical expertise to support that issue." (Plaintiff's Brief at 19). Plaintiff's arguments are patently meritless. The ALJ's opinion contained a detailed examination of plaintiff's

medication history. The ALJ's lengthy statement regarding plaintiff's non-compliance with his medication regimen (A.R. 21) is well-supported, and is incorporated herein by reference. It was entirely appropriate for the ALJ's analysis to take into account the factor of plaintiff's non-compliance with prescribed treatment.[2] Furthermore, the record shows that nearly all of plaintiff's medication-related complaints concerned purported sexual side effects of his medications (*see e.g.*, A.R. 116, 175, 225, 239, 283), rather than side effects that would adversely impact plaintiff's ability to perform his past relevant work. Plaintiff testified at his August 16, 2005 hearing that he was not taking any medications other than Xanax as needed for social situations, and that he had not taken any other medications for approximately two years because plaintiff believed they caused sexual side effects and made it more difficult to measure his biofeedback progress. (A.R. 410-16, 419-24). I find no error in the Commissioner's analysis.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed and that plaintiff's request for a remand be denied.

Dated:  August 27, 2007          /s/  Joseph G. Scoville
                                 United States Magistrate Judge

---

[2] 20 C.F.R. §§ 404.1530 and 416.930 address the need to follow prescribed treatment. Subsection (a) states, "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." Subsection (b) states, "If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." 20 C.F.R. §§ 404.1530(a), (b), 416.930(a), (b).

**NOTICE TO PARTIES**

        Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).